**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jake Cabral,<br><br>                Plaintiff,<br><br>v.<br><br>State Farm Fire and Casualty Company,<br><br>                Defendant. | No. CV-21-00411-PHX-DGC<br><br>**ORDER** |

The parties disagree on whether Plaintiff's claims are covered by a homeowner's insurance policy, and Defendant State Farm has moved for summary judgment on this issue. The motion is fully briefed (Docs. 17, 18, 27, 28, 29) and the Court heard oral argument on January 13, 2022. For reasons set forth below, the Court finds no coverage and will grant summary judgment to Defendant.

**I.  Background.**

On November 24, 2017, Plaintiff was riding a dirt bike on sand dunes in California when he was involved in a collision with a dune buggy driven by Renee Denney. Both Plaintiff and Renee were seriously injured.

Through his father and guardian ad litem, Plaintiff sued Renee in the U.S. District Court for the Southern District of California, Case No. 3:18-cv-2014-L-BGS ("the California lawsuit"). Defendant State Farm had issued a homeowner's insurance policy to Renee and Jerry Denney ("the Policy"), but denied liability for the accident and Plaintiff's injuries. The Denneys and Plaintiff settled the California lawsuit with a stipulated

judgment against the Denneys for $1.5 million, an assignment to Plaintiff of the Denneys' rights under the Policy, and a covenant by Plaintiff not to collect the judgment from the Denneys.

Plaintiff then sued Defendant in this case, asserting the claims assigned to him by the Denneys. Plaintiff alleges breach of contract, breach of the covenant of good faith and fair dealing, insurance bad faith, breach of fiduciary duty, negligent misrepresentation, and consumer fraud. Plaintiff claims that the Policy provides coverage for his medical expenses, first aid expenses, bodily injuries, and property damage. Defendant continues to maintain that the Policy does not cover Plaintiff's injuries.

**II.  Summary Judgment Standard.**

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only disputes over facts that might affect the outcome of the suit will preclude summary judgment – the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.  The Single Issue In This Case.**

Plaintiff frames the single issue in this case as follows: "coverage in this action comes down to one central factual question – did Jerry Denney own the [dune buggy] in November 2017, on the day of the Collision?" Doc. 27 at 7. Defendant agrees that there is only one issue: "Who owns the dune buggy? Answering this question determines whether the Court should grant State Farm's Motion for Summary Judgment." Doc. 29 at 2.[1]

---

[1] Plaintiff does not argue that his bad faith or other claims should survive a finding of no coverage. Both parties agree that summary judgment for Defendant is warranted on all claims if coverage does not exist.

This case turns on a single issue because the Policy language is clear and the parties do not disagree on its meaning. The Policy's coverage for liability and medical expenses expressly excludes bodily injury or property damage "arising out of the ownership, maintenance, use, loading or unloading of . . . a **motor vehicle** owned or operated by . . . any **insured**[.]" Doc. 18-1 at 19, ¶ 1(e)(2) (emphasis in original).[2] The Policy defines "motor vehicle" to include "recreational vehicles," including a "dune buggy," that are "owned or leased by an insured." *Id.* at 58, ¶ 6(c). Thus, the dune buggy at issue in this case was a "motor vehicle" within the meaning of the Policy and was excluded from coverage if it was owned or leased by Renee or Jerry Denney, the "insureds" under the Policy. *See* Doc. 18 at 3, ¶¶ 12-13; Doc. 28 at 2, ¶¶ 12-13).[3]

Defendant contends that Jerry Denney's ownership of the dune buggy is an undisputed fact that entitles it to summary judgment. Plaintiff contends that Jerry's ownership is disputed and must be resolved by a jury. The Court accordingly must decide whether there is a genuine question of fact about Jerry's ownership of the dune buggy.

**IV.   The Parties' Evidence.**

Both Jerry and Renee testified in depositions that Jerry owned the dune buggy. *See* Docs. 28-2 at 35 ("Did Jerry own [the dune buggy]? [Renee:] Yes."), 49 ("Well, there are two photographs here. This is what we marked previously as Exhibit 9. First question is, is that the Sand Rail that you built? [Jerry:] Yes."), 29-1 at 6 ("Did you own the dune buggy that you were shown in those of [sic] pictures? [Jerry:] Yes."). Defendant also presents an affidavit in which Jerry confirms that he owned the dune buggy. Doc. 21-1 at 3.

---

[2] Property damage is also addressed in a second provision which imposes the same limitation. The Policy does not cover "property damage . . . arising out of . . . the ownership, maintenance, or use of a **motor vehicle**[.]" Doc. 18-1 at 19, ¶ 3(c)(4)(c) (emphasis in original).

[3] Plaintiff's Complaint also alleges that Defendant failed to pay for first aid rendered to him after the accident. Doc. 1-3, ¶ 19. But the Policy covers only "expenses for first aid to others *incurred by an insured* for *bodily injury covered under this policy*." Doc. 18-1 at 18, ¶ 2 (emphasis added). Plaintiff does not contend that the Denneys incurred expenses for first aid rendered to him, and, even if he did, this coverage turns on whether his bodily injury is covered by the Policy – an issue which depends on ownership of the dune buggy. The first aid claim thus requires no separate analysis.

In his deposition, Jerry explained how he acquired the dune buggy. He testified that he has been involved with dune buggies since the early 1970s and has built, bought parts for, and revamped dune buggies for many years. Doc. 28-2 at 46. He testified that he built the dune buggy at issue in this case from spare parts he had accumulated and a frame he bought in the 1990s. *Id.* ("So this particular one is incorporated out of some of the parts that I have had all along, plus, I bought a new frame in the 1990s some time"). Jerry testified that he used the dune buggy only at the California sand dunes, that he never applied for an Arizona license plate for the vehicle, that it had no vehicle identification number ("VIN"), and that he purchased Bureau of Land Management ("BLM") decals when he took the dune buggy to the California sand dunes. *Id.* at 46-47.[4] Renee testified that she and Jerry transported the dune buggy from Arizona to California in November 2017 by towing it on a trailer behind their motorhome. *Id.* at 37. Jerry states in his affidavit that he stored the dune buggy at his home in Gilbert, Arizona, maintained it for off-road use, and did not register it with the Arizona Department of Motor Vehicles. Doc. 21-1 at 3.

Plaintiff responds to this evidence by focusing on the lack of documentary proof of Jerry's ownership and the behavior of the Denneys, their counsel, and Defendant in the California lawsuit. Plaintiff asserts that there is "not one piece of documentary or physical evidence to support" Jerry's ownership of the dune buggy, pointing to the lack of "title, license plate, decal, insurance, bill of sale, receipt, photographs, or any other such objective indicia that would normally support the ownership of a motor vehicle." Doc. 27 at 8. Plaintiff places particular significance on the lack of a title, citing Arizona law that requires owners of off-highway vehicles to apply for an Arizona title. *See* Doc. 27 at 3 (citing Ariz. Rev. Stat. §§ 28-2051 (setting out requirements for application for title), 28-2061 (providing that owners of off-highway vehicles must apply for title), 28-1171 (defining off-highway vehicles as including a "dune buggy")). Plaintiff argues that "[b]ecause there is no objective evidence to support [the claim that Jerry owned the dune buggy,] that makes

---

[4] When asked if he purchased a BLM decal for the dune buggy during the November 2017 excursion, Jerry asserted his Fifth Amendment right against self-incrimination. *Id.* at 47.

Jerry's credibility as a witness a central issue" in this case and the Court cannot make credibility determinations at the summary judgment stage. *Id.*

Plaintiff also cites the following from the California lawsuit: (1) a declaration from his counsel that the Denneys' attorney and Defendant's employees did not disclose that Jerry was the owner of the dune buggy; (2) emails between his counsel and the Denneys' counsel in which the Denneys' counsel did not identify an owner of the dune buggy; and (3) communications from Defendant to Plaintiff's counsel in which Defendant did not identify the grounds for denying coverage. Docs. 27, 28-1. Plaintiff also cites (4) deposition testimony by Anthony Miller, a claims adjuster for Defendant, stating that he relied on the Denneys' representation that they owned the dune buggy and conducted no investigation to confirm this fact; (5) deposition testimony by Jody Broaddus, the Denneys' counsel in the California lawsuit, that the Denneys' never provided her with documentation of Jerry's ownership; (6) deposition testimony by Renee that she has no documentation showing that Jerry owned the dune buggy, such as a bill of sale, maintenance records, or photographs; and (7) deposition testimony by Jerry that he never applied for an Arizona title or license plate, he never obtained insurance for the dune buggy, the dune buggy had no VIN, and he had no receipts for maintenance of the vehicle. *Id.* Plaintiff argues that these facts call the credibility of Jerry's claim of ownership into question, precluding summary judgment.

**V.      Analysis.**

The motion presents an interesting summary judgment issue. Defendant presents affirmative evidence that Jerry owned the dune buggy – deposition testimony from two witnesses and a sworn affidavit. Plaintiff presents no affirmative evidence that Jerry did not own the dune buggy, and never explains who else might have owned it or where else Renee might have obtained it in November 2017. Plaintiff instead argues that the lack of documentary proof of ownership is a sufficient reason to doubt the credibility of the Denneys' claim and deny summary judgment. The Court will address Plaintiff's arguments

under Arizona vehicle licensing law and then whether Plaintiff's credibility arguments are sufficient to defeat summary judgment.

### a.      Ownership Under Arizona Law.

When deciding issues of vehicle ownership, Arizona courts ask which party possesses and controls the vehicle. *Quihuis v. State Farm Mutual Automobile Ins. Co.*, No. 10-CV-376-TUC-RCC, 2011 WL 13118041, at *4 (D. Ariz. Nov. 30, 2011) ("Although certificate of title can be evidence of ownership, courts more often consider which party has the right to possess and control the vehicle."); *see also Martinez v. One Beacon Am. Ins. Co.*, No. CV-18-04129-PHX-SMM, 2020 WL 7016053, at *7 (D. Ariz. Mar. 23, 2020) ("In determining ownership, courts consider whether an individual has the right to possess and control the property at issue") (citations omitted); *Reinke v. Alliance Towing*, 88 P.3d 1154, 1158 (Ariz. Ct. App. 2004) (evaluating ownership by considering whether plaintiff was "entitled to dominion, control, and possession of the car").

A certificate of title can be evidence of ownership, but it is not required or dispositive because "'ownership' exists independent of a certificate of title." *Reinke*, 88 P.3d at 1157; *see also Wallace v. Employers Cas. Co.*, 418 F.2d 1323, 1325 (9th Cir. 1969) ("Arizona courts have consistently held that ownership of a vehicle in no wise depends upon prior compliance with the transfer of title provisions[.]"). Thus, vehicle ownership in Arizona "does not depend upon an individual obtaining certificate of title or complying with Arizona's transfer of title statute." *Martinez*, 2020 WL 7016053, at *7; *see also Quihuis*, 2011 WL 13118041, at *5 ("Arizona law clearly states that a purchaser of an automobile can be the owner even if he fails to obtain a certificate of title when he purchases the automobile."); *Herendeen v. U.S. Fid. & Guar. Co.*, 507 P.2d 1011, 1012 (Ariz. Ct. App. 1973) ("[A] person may still be the owner of an automobile even though he did not obtain a certificate of title when he purchased it.").

Jerry's ownership of the dune buggy under Arizona law thus turns on whether he had possession and control of the vehicle, not on whether he can produce a certificate of title. And Defendant is the only party in this case that presents evidence on possession and

control of the dune buggy. *See*, *e.g.*, Doc. 28-2 at 46 (testimony by Jerry that he built the dune buggy), 46-47 (testimony by Jerry that he used the dune buggy at the California sand dunes), 37 (testimony by Renee that she and Jerry transported the dune buggy from Arizona to California in November 2017 by towing it on a trailer behind their motorhome); Doc. 21-1 at 3 (Jerry's affidavit that he stored the dune buggy at his home in Gilbert and maintained it for off-road use). Plaintiff presents no evidence on whether Jerry possessed and controlled the dune buggy. His arguments regarding Arizona licensing law do not defeat summary judgment.

### B. Defendant's Burden of Proof and Summary Judgment.

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The type of showing required," however, "depends on who has the burden of proof." S. Gensler & L. Mulligan, Federal Rules of Civil Procedure, Rules and Commentary at 152 (2021).

When a nonmoving party bears the burden of proof at trial, it cannot defeat summary judgment merely by attacking the credibility of the moving party's evidence. *See Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1223 n.3 (10th Cir. 2017) (plaintiff with burden of proof must present its own evidence and cannot defeat summary judgment solely by attacking the credibility of the moving party's proof); *Levesque v. Doocy*, 560 F.3d 82, 87 (1st Cir. 2009) (same). As the Supreme Court has explained, summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

When the moving party bears the burden of proof at trial, different considerations apply. The moving party must present facts that would support a jury finding in its favor, and the nonmoving party can defeat summary judgment by presenting evidence that raises a "genuine" issue of fact. Fed. R. Civ. P. 56(a); *see also* Gensler & Mulligan at 158-59. The Supreme Court has explained the kind of evidence required to raise a "genuine" issue:

"summary judgment will not lie if the dispute about a material fact is 'genuine,' *that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.*" *Anderson*, 477 U.S. at 248. Thus, summary judgment can be granted only if a moving party who bears the burden of proof shows that there is no genuine issue of fact – that there is no basis upon which a jury could find for the nonmoving party.

As one court has explained: "[w]here, as here, the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisf[y] these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. National Retirement Fund*, 778 F.3d 593, 601 (7th Cir. 2015); *see also Leone v. Owsley*, 810 F.3d 1149 (10th Cir. 2015) ("When the moving party on a motion for summary judgment has the burden of proof, . . . his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party"); *James & Jan, LLC v. Lexington Ins. Co.*, No. 2:17-CV-01306-RGK-SS, 2018 WL 1409738, at *6 (C.D. Cal. Jan. 30, 2018) ("Lexington would bear the burden at trial of showing that the damage fell within the Policy's exclusion. Accordingly, Lexington must demonstrate why the record is so one-sided as to rule out the prospect of Plaintiff prevailing.") (citations and quotation marks omitted).

In this case, Defendant bears the burden of proof on ownership of the dune buggy. In Arizona, "[a]n insured bears the burden of establishing coverage under a policy" and "the insurer bears the burden of establishing the applicability of an exclusion." *Tapestry on Cent. Condo. Ass'n v. Liberty Ins. Underwriters Inc.*, 461 F. Supp. 3d 926, 934 (D. Ariz. 2020) (citing *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000)); *see also Fidelity National Title Ins. Co. v. Osborn III Partners LLC*, 483 P.3d 237, 247 (Ariz. Ct. App. 2021) (same, citing *Keggi*). The parties agreed at oral argument that ownership of the dune buggy is an exclusion under the Policy and that Defendant therefore bears the burden of proof on this issue. *See also* Doc. 28-1 at 19, ¶ 1(e)(2) (relevant Policy provision located in section titled "Exclusions"). Thus, if the jury in this case does not

believe Jerry and Renee's testimony that Jerry owned the dune buggy, Defendant will fail to meet its burden of proof and Plaintiff will prevail.

As noted above, the jury will be instructed that, under Arizona law, ownership primarily turns on possession and control of the dune buggy and "does not depend upon an individual obtaining certificate of title[.]" *Martinez*, 2020 WL 7016053, at *7. In light of this instruction, the Court must determine whether the Denney's uncontradicted testimony about how the dune buggy was built, possessed, and controlled could be disbelieved by a reasonable jury based on the facts Plaintiff has emphasized – the lack of a title or other documentary proof of ownership and the failure of various parties to produce such proof in the California litigation.

Making this decision without crossing into improper credibility determinations is an important task for the Court. Fortunately, there are a few guideposts. The Court must, of course, view the evidence in the light most favorable to Plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Numerous cases also make clear that a nonmoving party may not defeat summary judgment merely by expressing a desire to challenge the credibility of witnesses at trial. "The general rule is that *specific facts* must be produced in order to put credibility in issue so as to preclude summary judgment. Unsupported allegations that credibility is in issue will not suffice." 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2726 (4th ed., Apr. 2021 update) (emphasis added; footnotes with supporting cases omitted). Further, courts have identified additional factors that can be considered without usurping the jury's role of assessing credibility:

> The burden of proof is particularly relevant when the party with the burden of proof moves for summary judgment and the opposing party presents evidence contesting the veracity of the movant's evidence. In this situation, if the testimony of a witness is necessary to carry the movant's burden of proof, we look carefully at whether the witness is unbiased and competent, and whether his testimony is positive, internally consistent, unequivocal, and in full accord with the documentary exhibits. If the movant makes this showing, then the opposing party cannot force a trial merely to cross-examine the witness or in the hope that something might turn up at the trial. However, summary judgment is improper when specific facts are

> alleged that if proven would call the credibility of the moving party's witness into doubt, especially when the challenged testimony is an essential element of the plaintiff's case. Indeed, if the credibility of a critical *interested* witness is even partially undermined in a material way by the non-moving party's evidence, summary judgment in favor of the party with the burden of proof should be denied.

*Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (quotation marks, citations, and ellipses omitted; emphasis in original).[5]

Using these guideposts, the Court reaches the following conclusions.

The Denneys' testimony is necessary to carry Defendant's burden of proof. Indeed, it is the only direct evidence on ownership of the dune buggy. But Plaintiff has presented no evidence or argument to suggest that the Denneys are biased or incompetent witnesses, or even that they are "interested" witnesses. *Id.* Plaintiff's counsel suggested at oral argument that Jerry's statements that he owned the dune buggy are self-serving, but Plaintiff has produced no evidence that Jerry or Renee have a personal stake in the outcome of this lawsuit. The depositions of Jerry and Renee were taken in this case, not the California litigation, and occurred after they had stipulated to a judgment against them in the California case, assigned to Plaintiff their rights against Defendant, and received a binding covenant from Plaintiff not to collect the judgment from them. They are not at risk in this lawsuit. What is more, their actions in the California litigation – stipulating to a

---

[5] Examples of "specific facts" that raise genuine questions about a witness's credibility include when the witness's testimony has been contradicted, the witness's personal knowledge of or ability to perceive the topic of their testimony is doubtful, the witness has a character for untruthfulness, or the witness is biased by self-interest. *See*, *e.g.*, *Haas v. Betz Lab'ys*, 185 F.3d 866 (9th Cir. 1999) (witness's testimony that he did not speak with coworker about applicant before interview was contradicted by coworker testimony that they did speak about applicant's qualifications); *Dawson v. Dorman*, 528 F. App'x 450, 452-53 (6th Cir. 2013) (witness-officer had history of dishonesty and fraud with former and current employers and the U.S. Attorney's office); *Potter v. Synerlink Corp.*, 562 F. App'x 665, 677 (10th Cir. 2014) (witness "misrepresented the nature of his notes concerning his counseling sessions" and "exaggerated the frequency of the counseling sessions"); *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158-59 (Fed. Cir. 2004) (impeachment of testimony that document was distributed in 1986 where document was undated, long delay suggested witnesses' memories were faulty, testimony was tentative, and witnesses were paid for their time); *Cameron v. Frances Slocum Bank & Trust Co.*, 824 F.2d 570, 575 (7th Cir. 1987) (testimony was inconsistent and witness verified a false signature).

substantial judgment and then assigning their claims against Defendant to Plaintiff – hardly suggest that they are aligned with Defendant.[6]

Nor has plaintiff presented evidence that the Denneys' testimony is equivocal or internally inconsistent. The deposition excerpts and affidavit provided to the Court contain positive and unambiguous assertions that Jerry built, owned, and stored the dune buggy before the accident with Plaintiff.

To be sure, Plaintiff has attempted to assert specific facts – no title, registration, bill of sale, auto insurance, maintenance receipts, or VIN for the dune buggy. The question is whether those facts "if proven would call the credibility of the moving party's witness into doubt." *Id.* The Court concludes that they would not.

The facts upon which Plaintiff relies are not contested by the Denneys. In fact, they are confirmed by the Denneys. More importantly, the facts are entirely consistent with Jerry's account of how he built the vehicle from long-held spare parts and a frame he purchased in the 1990s and his testimony that he used the vehicle only in California and therefore did not register it in Arizona. Plaintiff has identified no evidence suggesting that any portion of Jerry's account is false. Plaintiff presents no evidence that someone else built or purchased the dune buggy, that the Denneys borrowed or rented it from some other owner, that they did not tow it to the sand dunes behind their motor home, or that Jerry used it in Arizona and therefore should have registered it here.[7] And the fact that Jerry invoked the Fifth Amendment when asked whether he purchased a BLM decal for the November 2017 trip says nothing about whether he owned the dune buggy. To the

---

[6] Because they are not "interested" parties, *Nationwide* suggests that a partial undermining of their credibility is not enough to defeat summary judgment. *Id.*

[7] The record reflects no discovery efforts by Plaintiff to obtain such evidence, such as deposing friends, family members, or neighbors of the Denneys to test their claim that Jerry built dune buggies and garaged and maintained this dune buggy at his home in Gilbert. Nor does Plaintiff suggest that he searched public records or other sources to identify another owner of the vehicle – evidence which would contradict Jerry's testimony. The Court hastens to add that this does not place the burden of proof at trial on Plaintiff, but instead merely reflects his obligation under Rule 56 to establish a genuine issue of fact in order to defeat summary judgment. *Anderson*, 477 U.S. at 248, 250 (if the movant meets its initial responsibility, the burden then shifts to the nonmovant to demonstrate the existence of a genuine issue of fact).

contrary, he likely would have Fifth Amendment concerns about violating BLM regulations only if he owned the vehicle.[8]

Plaintiff's facts regarding Renee likewise do not conflict with Jerry's testimony about the origin and ownership of the dune buggy. These include that she was unsure whether her or Jerry's name was on any legal title to the dune buggy, was unsure of the purchase price, had no bill of sale or other documentation of the purchase price, did not know the VIN, was unsure if the dune buggy had an off-highway decal, did not have any maintenance records or receipts for the vehicle, was unsure if she had photographs of her or anyone else using the dune buggy prior to 2017, and never told State Farm that she or Jerry owned the dune buggy or provided any documentation to that effect. Doc. 28-2 at 35-40. These facts all square with Jerry's account about the origin and ownership of the vehicle.[9]

Plaintiff argues that Defendant's "claims specialist who purportedly investigated and reviewed the claim regarding the Collision, testified that the only evidence he ever received regarding the ownership of the Vehicle was the word of Jerry Denney or Denneys' attorney that Jerry owned the vehicle – no documents or any other objective evidence or indicia of ownership was provided – and that he didn't do any independent investigation on that issue." Doc. 27 at 4. Plaintiff similarly argues that the Denneys' attorney in the California lawsuit never "saw any objective documents supporting that Jerry owned the

---

[8] Plaintiff argues that Jerry had no photos of the dune buggy or himself driving it, but Jerry testified that he does not take photographs. Doc. 28-2 at 50. As Plaintiff's counsel described it, Jerry is "not a picture person." *Id.* Further, it appears there were at least two photos of the dune buggy, including one with Renee as the driver, because they were marked as exhibits during Jerry's deposition. *Id.* at 49-50.

[9] Plaintiff asserted at oral argument that to consider testimony that Jerry built and owned the dune buggy as consistent with testimony that the Denneys did not have a certificate of title, bill of sale, or other documentary corroboration of ownership would itself be an impermissible credibility determination. This is not so. "[T]he Court is not precluded from relying on testimony from a party that is not contradicted by other evidence." *Joshua David Mellberg, LLC*, No. CIV 14-2025-TUC-CKJ, 2020 WL 2569908, at *8 (D. Ariz. May 21, 2020). Courts have rejected the position that accepting any sworn testimony inherently makes a credibility determination because "[t]he effect of th[at] approach . . . would be to deny summary judgment whenever the motion depended on facts presented by an affidavit – a restriction that would cripple the summary-judgment procedure." 10A Wright & Miller § 2726.

- 12 -

Vehicle." *Id.* But these facts are entirely consistent with Jerry's testimony that he built the dune buggy himself and had no title, bill of sale, or registration. And whether Defendant's claims specialist did an adequate investigation does not prove, one way or the other, who owned the vehicle.

Plaintiff stresses that the Denneys' counsel did not identify the owner of the dune buggy during the California litigation. *Id.* at 4-5. But Plaintiff does not show that the litigation ever required that disclosure to be made, such as through a discovery request or court order. Moreover, the informal email exchanges which Plaintiff cites concern the assertion by the Denneys' counsel that there was no insurance coverage for the accident, an assertion consistent with the Denneys' ownership of the dune buggy. Doc. 28-1 at 39-54. Plaintiff's counsel did send an email to the Denneys' counsel asking her to identify the "RO" of the dune buggy, which Plaintiff asserts meant "registered owner" (*id.* at 36, ¶¶ 20, 41), and to provide "a copy of proof of that registration/ownership" (*id.* at 44). But the Denneys' counsel's failure to provide these documents squares entirely with Jerry's testimony that they have never existed.

Finally, Plaintiff asserts that when Renee responded to discovery in the California lawsuit she identified nine vehicles and motorcycles owned by her and Jerry, but failed to identify any off-road vehicles like a dune buggy. Doc. 27 at 6. But Plaintiff cites only to a declaration of his counsel (Doc. 28-1 at 33, ¶ 10) and does not provide the actual discovery responses. The Court cannot conclude that this alleged omission from an undisclosed discovery response constitutes meaningful evidence of the Denneys' lack of credibility, particularly when the wording of the discovery request and Renee's response have not been provided. *See Joshua David Mellberg, LLC*, 2020 WL 2569908 at *7 ("[T]here is no evidence in the record to support Plaintiffs' assertion Fine is not credible. Specifically, Fine's purported statement regarding his involvement, or lack thereof, with Impact, is not included in the record[.]").

In summary, even if all of Plaintiff's "specific facts" are accepted as true, they do not contradict the Denneys' testimony and they say nothing about the key question of

ownership – who had possession and control of the dune buggy in November 2017? Defendant alone has presented evidence on this question. Plaintiff's arguments about a lack of documentation – whether here or in the California case – simply do not address possession and control. Thus, viewing the evidence in the light most favorable to Plaintiff, his specific facts, even "if proven," do not "call the credibility of the moving party's witness into doubt[.]" *Nationwide*, 845 F.3d at 382. The Court finds no genuine issue of material fact on ownership of the dune buggy and therefore will grant summary judgment to Defendant.

**IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 17) is **granted**. The Clerk's Office shall close this case and enter judgment accordingly.

Dated this 31st day of January, 2022.

David G. Campbell
Senior United States District Judge